HOWE A. STIDGER AND BETTY M. STIDGER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2131–62. Filed September 3, 1963.

*Howe A. Stidger*, pro se.
*Arthur P. Generaux, Jr.*, for the respondent.

ARUNDELL, *Judge:* Respondent determined a deficiency in income tax for the calendar year 1958 in the amount of $180.10.

The only issue is whether petitioner, Howe A. Stidger, is entitled to deduct, during 1958, as traveling expenses while away from home in pursuit of a trade or business, an amount of $650 for meals while stationed in the Far East.

FINDINGS OF FACT

The stipulated facts are so found and are incorporated herein by this reference.

Petitioners, husband and wife, are individuals now residing in Sacramento, Calif. At the time they filed their petition they were residing at Cherry Point, N.C. The joint return for the calendar year 1958 was filed with the district director of internal revenue at Greensboro, N.C. Petitioner Howe A. Stidger will hereinafter sometimes be referred to as petitioner.

Petitioner was a captain in the United States Marine Corps during the taxable year 1958. He is now retired but prior to his retirement in July 1962 he had continually served as an active member of the Corps since 1942. Approximately 2½ to 3 years preceding October 1, 1957, petitioner was attached to an air squadron stationed in El Toro in southern California. On October 1, 1957, petitioner, together with his component, were assigned to duty in the Far East with the First Marine Aircraft Wing, a part of Aircraft Fleet Marine Force, Pacific, with administrative headquarters at Marine Corps Air Station, El Toro (Santa Ana), Calif.

Dependents of personnel assigned to duty with the Aircraft Fleet Marine Force, Pacific, in the Far East, were prohibited by Marine Corps orders to accompany said personnel or establish homes in the Far East.

During the entire year 1958 petitioner's wife and two children resided at Santa Ana, Calif.

Throughout the entire year 1958 petitioner received a housing allowance of approximately $102.50 per month and subsistence allowance of approximately $42.50 per month.

On October 1, 1957, petitioner departed from El Toro, Calif. Petitioner's itinerary from October 1957 to December 1958 was as follows:

| Date | Place | Approximate number of days |
|---|---|---|
| Oct. 57 to 20 Feb. 58 | Departed MCAS El Toro, Calif., traveled to, and duty at Iwakuni, Japan. | 142 |
| 21 Feb. 58 to 7 Mar. 58 | Cubi Point, Philippine Islands | 14 |
| 8 Mar. 58 to 19 Apr. 58 | Iwakuni, Japan | 42 |
| 20 Apr. 58 to 23 May 58 | Naha AFB, Okinawa | 33 |
| 24 May 58 to 10 Aug. 58 | Iwakuni, Japan | 78 |
| 11 Aug. 58 to 29 Aug. 58 | Yokosuka, Japan | 18 |
| 30 Aug. 58 to 1 Sept 58 | Iwakuni, Japan | 2 |
| 2 Sept. 58 to 19 Sept. 58 | San Diego, Calif. | 17 |
| 20 Sept. 58 to 25 Sept. 58 | Iwakuni, Japan | 5 |
| 26 Sept. 58 to 10 Oct. 58 | Naha AFB, Okinawa | 14 |
| 11 Oct. 58 to 14 Dec. 58 | Iwakuni, Japan | 64 |
| 15 Dec. 58 to 19 Dec. 58 | Travel to MCAS El Toro, Calif. | 4 |

Paragraph 9 of the stipulation is as follows:

9. During the year 1958, petitioner was placed in travel status for forty-nine days and, in addition to his normal housing and subsistence allowance, his expenses for meals and lodging were reimbursed. Petitioner does not claim travel expenses for the forty-nine days that he received reimbursement for the costs of meals and lodging.

Commissioned officers pay for their own meals at an official duty station; however, if they are on temporary assignment or in travel status, they are reimbursed for their meal expenses.

During the periods that petitioner was located at Iwakuni he received free lodging in addition to his housing and subsistence allowance but was not in travel status and he therefore did not receive free meals.

While in the Far East in 1958, except for the 49 days he was placed in travel status, petitioner had to pay for his own meals which cost him $650.

On the joint return for 1958 petitioner deducted the $650 he spent for meals. Respondent disallowed the deduction for the reason that "it has not been established that the amount claimed constitutes an ordinary and necessary business expense."

Petitioner completed his tour of duty in the Far East in December 1958 and was thereafter assigned to duty at Marine Corps Air Station, Cherry Point, N.C., where he remained until he retired in July 1962.

### ULTIMATE FINDINGS OF FACT

During the taxable year 1958 petitioner's tax home was his military post of duty in the Far East. His stay there was indefinite, indeterminate, or permanent and not temporary.

### OPINION

The issue is whether petitioner is entitled to deduct, under sections 62(2)(B) and 162(a)(2), I.R.C. 1954,[1] the $650 he spent during 1958 for meals while stationed in the Far East. The corresponding provisions of the 1939 Code were sections 22(n)(2) and 23(a)(1)(A). In *Commissioner* v. *Flowers*, 326 U.S. 465, the U.S. Supreme Court declared that three conditions must be satisfied before a traveling expense deduction may be allowed under section 23(a)(1)(A) and that "Failure to satisfy any one of the three conditions destroys the traveling expense deduction." The three conditions were stated thus:

---

[1] SEC. 62. ADJUSTED GROSS INCOME DEFINED.

For purposes of this subtitle, the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(2) TRADE AND BUSINESS DEDUCTIONS OF EMPLOYEES.—

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(B) EXPENSES FOR TRAVEL AWAY FROM HOME.—The deductions allowed by part VI (sec. 161 and following) which consist of expenses of travel, meals, and lodging while away from home, paid or incurred by the taxpayer in connection with the performance by him of services as an employee.

SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; \* \* \*

(1) The expense must be a reasonable and necessary traveling expense, as that term is generally understood. This includes such items as transportation fares and food and lodging expenses incurred while traveling.

(2) The expense must be incurred "while away from home."

(3) The expense must be incurred in pursuit of business. This means that there must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or of his employer. Moreover, such an expenditure must be necessary or appropriate to the development and pursuit of the business or trade.

In the *Flowers* case the Supreme Court held that the taxpayer there did not satisfy the third condition. In the instant case we do not think petitioner has satisfied the second condition.

Petitioner contends that during 1958 his "home" was in Santa Ana, Calif., where his wife and children were residing and that, therefore, the expenses in question were incurred "while away from home." "Home" as used in the statute means the taxpayer's principal place of business, employment, or post or station at which he is employed. *Mort L. Bixler*, 5 B.T.A. 1181; *Raymond E. Kershner*, 14 T.C. 168, 174; *James R. Whitaker*, 24 T.C. 750; *O'Toole* v. *Commissioner*, 243 F. 2d 302 (C.A. 2, 1957), affirming per curiam a Memorandum Opinion of this Court. In the *O'Toole* case the Second Circuit said:

Upon these facts the Tax Court found that petitioner's home, for the purpose of the statute, was at Long Beach where he was engaged in full time employment and that petitioner's maintaining another home at Laurelton was "immaterial." * * * This finding is clearly correct.

If, however, petitioner's place of employment may be said to be temporary as distinguished from indefinite, indeterminate, or permanent, a deduction for traveling expenses while away from home may be allowed. *Harry F. Schurer*, 3 T.C. 544; *E. G. Leach*, 12 T.C. 20. Cf. *Beatrice H. Albert*, 13 T.C. 129. In *Leo C. Cockrell*, 38 T.C. 470, 479, affd. (C.A. 8, Aug. 19, 1963), we said:

This Court and other courts have allowed a deduction for expenditures for travel including meals and lodging when a taxpayer's employment at the place where such expenditures are made is temporary as contrasted with indefinite or indeterminate. *Peurifoy* v. *Commissioner*, 358 U.S. 59, 61 (1958), and cases there cited. What constitutes "temporary" as distinguished from "indefinite" is a question of fact. * * *

Although petitioner's tour of duty in the Far East was for a period of approximately 15 months, we do not think it can be said to be a temporary assignment. While 15 months may have lacked real permanence, "the mere absence of permanence does not necessarily imply that degree of temporariness which would allow deductibility of traveling expenses." *Floyd Garlock*, 34 T.C. 611, 616. Cf. *Beatrice H. Albert, supra.* We have found as an ultimate fact that petitioner's stay in the Far East was not temporary.

We think the facts in the instant case are very much like the facts in *Bercaw* v. *Commissioner*, 165 F. 2d 521 (C.A. 4, 1948), affirming a

Memorandum Opinion of this Court; and *James R. Whitaker, supra*. See also Rev. Rul. 55–571, 1955–2 C.B. 44.

In *Bercaw* the taxpayer was an Army captain who was stationed in Fort Meade, Md. He claimed a deduction for money spent for meals at Fort Meade and for weekend trips to his home in Virginia. We disallowed the claimed deduction. In affirming our holding, the Fourth Circuit, among other things, said:

The taxpayer was engaged in the business of an Army officer. His place of business was his particular Army post. If his Army duties required him to travel, he would have received a per diem travel allowance which would not have been taxable. *Jones v. United States*, 60 Ct. Cl. 552. But whenever he made a permanent change of station that place of duty became his place of business and there was his "home" within the meaning of Section 23(a)(1)(A). See *Commissioner v. Flowers*, 326 U.S. 465, 66 S.Ct. 250, 90 L. Ed. 203; *Barnhill v. Commissioner*, 4 Cir., 148 F. 2d 913, 159 A.L.R. 1210. Thus the expenditures for meals and striker service while at this post were personal living expenses and nondeductible * * *. This conclusion is inescapable when it is remembered that this officer has been paid commutation of quarters and a subsistance allowance, both of which allowances are not considered as income for the purposes of taxation.

In *James R. Whitaker, supra*, the taxpayer was a civil engineer residing at Hawarden, Iowa, where he maintained a home for himself and his family. In February 1951 he commenced work as an assistant project engineer for North Atlantic Constructors, a joint venture operating under a contract with the Department of the Army for the performance of certain off-shore construction in the general vicinity of Thule, Greenland. The exact location of the job site was a military secret. He was in Thule from December 15, 1951, to January 5, 1952; from April 8, 1952, to August 12, 1952; and from August 29, 1952, to November 26, 1952. The taxpayer's family was not permitted to accompany him to Greenland. Whenever he left Greenland he was reimbursed for traveling expenses incurred with the exception of one trip. In his 1952 income tax return the taxpayer claimed board and lodging expenses while at Thule, Greenland. He spent a total of 222 days in Thule during the taxable year 1952. In disallowing the claimed deduction, we said:

Here, although petitioner contends Thule was not his main post of duty or principal place of business, we think the facts call for the ultimate finding that it was. The fact that petitioner was not permitted to take his family to Thule, so that he had no choice in the matter, does not help petitioner. * * *

The facts in the instant care are distinguishable from those in *Laurence P. Dowd*, 37 T.C. 399, relied upon by petitioner, in that the evidentiary facts in *Dowd* showed that Dowd's employment in Japan during 1956 and 1957 was temporary as contrasted with indefinite, indeterminate, or permanent.

We hold petitioner is not entitled to deduct the $650 spent for meals during the taxable year 1958.

*Decision will be entered for the respondent.*